**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JULIENE HAMM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TIM HORTONS USA INC., and BEN'Z FRIENDS CAFE, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff Juliene Hamm complains against Defendants Tim Hortons USA Inc. and Ben'z Friends Cafe, Inc. and demands a trial by jury as follows:

**PARTIES, JURISDICTION, and VENUE**

1. Plaintiff Juliene Hamm resides in Bath, Maine.

2. Defendant Tim Hortons USA Inc. ("THUSA") is a Florida corporation registered with the Maine Secretary of State to do business in Maine, which operates several Tim Hortons restaurants throughout the State, including the restaurant on North Street in Houlton, ME.

3. Defendant Ben'z Friends Cafe, Inc. ("BF") was, until being administratively dissolved, a corporation registered to do business in the State of Maine. Upon information and belief, BF is or was owned by Mercedes Melo of Houlton, Maine and is or was an entity affiliated with THUSA.

4. Jurisdiction is proper under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

Jurisdiction is also proper under 28 U.S.C. § 1331 because the matter involves a question of federal law.

5. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(h) of the Rules of this Court, this action should be tried in Bangor because the events at issue occurred at the Tim Hortons store in Houlton, Maine.

6. For purposes of Counts I and II, Plaintiff has exhausted all administrative requirements and/or has met all relevant conditions precedent before commencing suit, including obtaining a so-called “Notice of Right to Sue” from the Maine Human Rights Commission (MHRC) and have commenced suit no later than two years from the last act of discrimination.

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by Defendants as a full-time associate between October 20, 2023 and August 20, 2025.

8. While THUSA and BF were at all material times legally distinct and separate entities, THUSA and BF each exercised power or control over the terms and conditions of Plaintiff’s employment and shared control over labor relations. For example, THUSA paid Plaintiff’s wages, but BF reported Plaintiff’s hours and related wage information to THUSA. Likewise, Plaintiff was subject to the terms of the THUSA employee or personnel handbook as well as its “open door” dispute resolution policy and anti-discrimination policies and reporting procedures, but BF was responsible for implementing and enforcing those policies and procedure. Both

defendants were responsible for supervising the day-to-day duties of Houlton-based employees; both had authority to hire, fire, or discipline employees; both had authority to promulgate work rules, conditions of employment, and work assignments; and each maintained power over compensation, benefits and overtime.

9. At all material times, THUSA and BF jointly employed Plaintiff.

10. On June 16, 2025, Plaintiff was working his scheduled morning shift at Tim Horton's in Houlton, Maine. One of Plaintiff's supervisors, Sasha Pullen, came into work with Plaintiff's ex-boyfriend, Joao "John" Costa Jr., who was also a Tim Horton's employee but not on the schedule.

11. Mr. Costa approached Plaintiff while he was working and told him he wanted to speak with him privately in the bathroom. When they were in the bathroom alone, Mr. Costa said to Plaintiff "I'm horny, and if you want to be friends with benefits, you need to give me head [oral sex] now."

12. Plaintiff said "no." He was extremely uncomfortable and left work, as it was towards the end of his shift.

13. The next day, on June 17, 2025, Plaintiff came into work and complained about the incident on June 16 to his supervisor, Ms. Pullen. She told Plaintiff, "if it happens again, tell me."

14. Plaintiff, a full-time employee, noticed that he was not scheduled for any future shifts after June 17. He was not provided with any explanation for this.

15. On June 18, 2025, in compliance with Tim Horton's employee policies, Plaintiff reported the co-worker harassment incident to Tim Horton's Corporate

Human Resources over the phone. The person with whom Plaintiff spoke told him that H.R. would investigate and send a copy of an investigation report to him.

16. Plaintiff never received an investigation report, but learned that the local Tim Hortons agent, Mercedes Melo, was provided with such a report.

17. Ms. Melo never discussed the matter or reviewed the investigation report with Plaintiff. However, Ms. Melo told Plaintiff that he had to "apologize" to Ms. Pullen and to Mr. Costa (the assailant) for the "trouble [you] caused."

18. On August 20, 2025, Ms. Melo fired Plaintiff.

19. Plaintiff filed a complaint with the Maine Human Rights Commission on October 1, 2025. He obtained his Notice of Right to Sue on April 29, 2026.

**COUNT I**
**5 M.R.S. § 4572; 42 U.S.C. § 2000e**
**Sexual Harassment/Hostile Work Environment Based on Sex**

20. Plaintiff repeats the allegations contained in Paragraphs 1 through 19.

21. To succeed on a claim for sexual harassment/hostile work environment under the MHRA or Title VII, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based upon sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (5) the sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and plaintiff perceived it so; and (6) there is a basis for employer liability.

22. Plaintiff identifies as a gay man and is therefore a member of a protected class under the MHRA and Title VII.

23. As set forth above, Plaintiff was subject to unwelcome sex-based harassment. Such harassment was objectively and subjectively offensive, and was sufficiently severe and pervasive to alter the terms and conditions of employment, to wit: workplace hostility, retaliation, and termination of employment.

24. Plaintiff reported the harassment to his employer(s) as directed by the THUSA policies and procedures.

25. Defendants ignored Plaintiff or otherwise failed to take prompt remedial or corrective action; failed to investigate or substantiate the harassment; and wrongfully terminated Plaintiff's employment.

26. As a direct and proximate result of Defendant's acts and omissions, Plaintiff experienced adverse employment action and sustained damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and Title VII:

A. Back pay from August 20, 2025 as determined by the Court;
B. Front pay in lieu of reinstatement, as determined by the Court;
C. Compensatory damages as determined by a iury;
D. Punitive damages as determined by a jury;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

**COUNT II**
**26 M.R.S. § 833; 5 M.R.S. § 4633; 42 U.S.C. § 2000-e3(a)**
**Retaliation**

27. Plaintiff repeats the allegations contained in Paragraphs 1-26.

28. Plaintiff engaged in activity protected under the Maine Whistleblower's Protection Act, 26 M.R.S. §§ 831-840 ("MWPA"); to wit, acting in good faith, he reported to his employer what he had reasonable cause to believe were violations of laws, rules, or regulations governing unemployment compensation, and refused to engage in activity that would be a violation of laws, rules, or regulations relative to unemployment compensation.

29. Likewise, Plaintiff engaged in activity protected under the anti-retaliation provisions of the MHRA and Title VII, to wit: opposing Defendants' unlawful acts or practices and reporting or complaining to his employer that he was subject to co-worker harassment.

30. By permitting a sexually hostile environment, failing to take prompt remedial action, and terminating Plaintiff's employment, Defendants subjected Plaintiff to adverse employment action.

31. As a direct and proximate result of Plaintiff's protected acts and conduct, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and Title VII:

A. Back pay from August 20, 2025 as determined by the Court;
B. Front pay in lieu of reinstatement, as determined by the Court;
C. Compensatory damages as determined by a jury;
D. Punitive damages as determined by a jury;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

**<u>Count III</u>**
**5 M.R.S. §§ 4682, 4684, 4684-A**
**Interference with Civil Rights**

32. Plaintiff repeats and re-alleges the foregoing paragraphs 1-31.

33. The Maine Civil Rights Act, 5 M.R.S. §4682 provides, in pertinent part:

> "A person whose exercise or enjoyment of the rights secured by…the laws of the United States or ….of the State has been interfered with may institute and prosecute a civil action for legal or equitable relief whenever a person:
>
> B. Intentionally interferes or attempts to intentionally interfere with the exercise or enjoyment by any other person of those secured rights by:
>
> (5) Engaging in any conduct that would cause a reasonable person to suffer emotional distress."

5 M.R.S. § 4682(1-A) (2023).

34. The Maine Civil Rights Act further provides:

> "A person has the right to engage in lawful activities without being subject to…any conduct that would cause a reasonable person to suffer emotional distress…by reason of sex. "

5 M.R.S. § 4684-A.

35. Through the acts and omissions set forth above, Defendants have intentionally interfered with Plaintiff's civil rights to be free from sex discrimination and otherwise engaged in conduct that would cause a reasonable person to suffer emotional distress by reason of his sex.

36. Plaintiff, a reasonable person, did in fact suffer emotional distress as a direct and proximate result of Defendant's acts or omissions and sustained damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MCRA:

A. An award of compensatory damages as determined by a jury;
B. An award of punitive damages as determined by a jury;
C. An award of reasonable attorney's fees and all costs (all counts); and
D. All other damages to which Plaintiff may be entitled.

Dated: August 19, 2026

*/s/ James A. Clifford*
James A. Clifford
james@cliffordclifford.com

*/s/ Andrew. P. Cotter*
Andrew P. Cotter
andrew@cliffordclifford.com

CLIFFORD & CLIFFORD, LLC
10 Moulton Street, 5th Floor
Portland, ME 04101
(207) 613-9465